TEXTO COMPLETO DE LA SENTENCIA
Comparecen el señor Baltazar Alberto Cossío Armaiz y la señora Carmen Lydia Cossío Armaiz, miembros de la Sucesión del señor Baltazar Alberto Cossío Crespo, mediante recurso de certiorari presentado oportunamente el 22 de septiembre de 2008. Solicitan los señores Cossío Armaiz que revoquemos la Sentencia Parcial dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 15 de julio de 2008, notificada el 22 de agosto de 2008. El 8 de septiembre de 2008, los señores Cossío Armaiz presentaron ante el Tribunal de Primera Instancia una moción de reconsideración, suplementada el 12 de septiembre de 2008. El foro de instancia declaró NO HA LUGAR la moción de reconsideración mediante Resolución de 16 de *1231 septiembre de 2008, notificada el 17 de septiembre de 2008.
La Sentencia Parcial dictada el 15 de julio de 2008 incorporó en su texto el decreto de finalidad dispuesto por la Regla 43.5 de Procedimiento Civil de Puerto Rico. Por tanto, aun cuando el recurso presentado es un certiorari, procede que se considere como una apelación. Mediante la referida Sentencia Parcial, dictada por la vía sumaria dispuesta por la Regla 36 de Procedimiento Civil de Puerto Rico, el foro primario condenó a los codemandados apelantes y a la codemandada señora Luz Elena Camacho Negrón por sí y en representación de la Sociedad Legal de Gananciales que tuvo constituida con el causante, al pago al demandante-apelado Eurobank de la suma principal de $1,417,280.52 más intereses y cargos según pactado en el correspondiente contrato de préstamo comercial. El foro de instancia, además, desestimó la Reconvención presentada por los miembros de la Sucesión Cossío Crespo.
En su recurso, los apelantes señalan los siguientes errores cometidos por el foro de instancia al dictar la Sentencia Parcial: 1) que no procedía dictar sentencia sumaria contra los herederos del garantizador, habiéndose acogido a la ley de quiebras la corporación deudora, 2) que no procedía dictar sentencia sumaria contra los herederos del garantizador porque las garantías dadas por su causante eran nulas de conformidad con la ley federal “Equal Credit Opportunity” (ECOA), 3) que no procedía dictar sentencia por la vía sumaria porque existía una controversia de hechos “bona fide”.
Perfeccionado el recurso, procedemos a la consideración del mismo.
I
El 18 de septiembre de 2003, Cosscam Distributors Inc., representada por su presidente Baltazar Alberto Cossío Crespo, y Eurobank, suscribieron ante Notario Público, un contrato de préstamo comercial, en el que además comparecieron como garantizadores personales Baltazar Alberto Cossío Crespo y su entonces esposa Luz Elena Camacho Negrón. Mediante el Contrato de Préstamo Comercial #1464000724, la corporación obtuvo un préstamo por la suma de $1,065,000.00, “para consolidar deudas con Eurobank y capital de operaciones” (Contrato de Préstamo Comercial Apéndice pág. 46V Las cláusulas Segunda y Tercera del Préstamo leen como sigue:
“Que el (los) GARANTIZADOR(ES) PERSONAL(ES) SOLIDARIO(S) está(n) dispuesto(s) a garantizar al BANCO PERSONALMENTE el cumplimiento específico de todas las obligaciones incurridas por LA PARTE PRESTATARIA con el BANCO, mediante el presente PRESTAMO, por entender que por ser accionista de la corporación es en los mejores intereses de la PARTE PRESTATARIA y en el de (los) GARANTIZADOR(ES) personalmente prestar dicha garantía personal continua y solidaria.
Que en esta misma fecha ha suscrito un pagaré a la orden del BANCO, por la suma principal de un MILLÓN SESENTA Y CINCO MIL DOLARES ($1,065,000.00) devengando intereses sobre dicha a razón de CERO PUNTO SETENTA Y CINCO POR CIENTO (0.75%) sobre la tasa básica de interés preferencial “Prime Rate” fluctuante, prevaleciente de tiempo en tiempo cargados por el Citibank, N.A., New York, a base de un año de 360 DIAS, copia del cual se acompaña y se hace formar parte del presente contrato, marcándose como ANEJO A.” (Énfasis nuestro).
A fin de garantizar la deuda contraída en virtud del Préstamo Comercial, Cosscam Distributors, Inc. y los señores Cossío y Camacho suscribieron el Contrato de Prenda de 18 de septiembre de 2003, mediante el cual entregaron a Eurobank, en calidad de prenda, los siguientes bienes:
“1. Pagaré hipotecario por la cantidad de $250,000.00, evidenciado con documento titulado Pagaré, con vencimiento a la presentación, suscrito por Baltazar Alberto Cossío Crespo y Luz Elena Camacho Negrón, el 13 de febrero de 1998 mediante el affidávit 449 del Notario Luis A. Hernández Vivoni. El pagaré quedó *1232 garantizado con hipoteca que se originó mediante la escritura Núm. 26 del antes señalado notario también suscrita el 13 de febrero de 1998. La hipoteca grava la siguiente propiedad:
—RUSTICA: Parcela B: Parcela de terreno compuesta de 2.4782 cuerdas, equivalentes a 9740.46 metros cuadros, radicada en el Barrio Quebrada Cruz del término municipal de Toa Alta, Puerto Rico. En lindes por el Noreste, con la parcela marcada con el número 7-C en el plano de mensura de la finca Los Cocos, levantado por el Agrimensor Ramón A. Rivera López, en enero de 1974; por el Noreste, con la parcela A, por el Sureste, con la parcela 2-C; por el Sureste, con la carretera estatal número 824, antes, ahora con una franja de terreno segregada para uso público.-------------------------------------------------------------------
2. Pagaré hipotecario por la cantidad de $377, 000.00, evidenciado con documento titulado Pagaré con vencimiento a la presentación, suscrito por Baltazar Alberto Cossío Crespo y Luz Elena Camacho Negrón, el 29 de julio de 1999 mediante el affidávit 555 de la Notario Janice Marie Bemal Maldonado. El pagaré quedó garantizado con hipoteca que se originó mediante escritura Núm. 72 de la antes señalada notario, también suscrita el 29 de julio de 1999. La hipoteca grava la misma propiedad descrita en el inciso (1).
3. Pagaré hipotecario por la cantidad de $438, 000.00, evidenciado con documento titulado Pagaré Hipotecario con vencimiento a la presentación suscrito por Baltazar Alberto Cossío Crespo y Luz Elena Camacho Negrón, el 18 de septiembre de 2003 mediante el affidávit 2,841 del Notario Manuel A. Frau. El pagaré quedó garantizado con hipoteca que se originó mediante la escritura Núm. 202 del antes señalado notario, también suscrita el 18 de septiembre de 2003. La hipoteca grava la misma propiedad descrita en el inciso (1).”
Como garantía adicional del préstamo, Cosscam Distributors y los señores Cossío y Camacho entregaron a Eurobank el documento de garantía solidaria, personal, y continua de los garantizadores Baltazar Alberto Cossío Crespo y Luz Elena Camacho Negrón suscrito el 18 de septiembre de 2003 mediante el affidávit 2853 del Notario Manuel A. Frau.
El 18 de septiembre de 2003, la corporación y los esposos Cossío-Camacho además obtuvieron de Eurobank la línea de crédito # 1464000732 por la suma de $250,000.00 al 1% sobre la tasa básica de interés preferencial fluctuante. Dicha obligación fue constituida mediante el documento titulado “Pagaré” suscrito en esa misma fecha ante Notario Público. A fin de garantizar dicho préstamo, la corporación prestataria entregó en calidad de prenda los mismos bienes entregados para garantizar el Préstamo Comercial, en virtud del mismo Contrato de Prenda. Como garantía adicional de la línea de crédito, los señores Cossío y Camacho extendieron igualmente una garantía solidaria, personal continua.
Eurobank, cumpliendo con su obligación, según pactada, desembolsó a favor de la prestataria Cosscam Distributors Inc. la suma de $1,065,000.00 por concepto del Préstamo Comercial y además en virtud de la línea de crédito, desembolsó la suma de $250,000.00. La corporación incumplió con el pago de la deuda contraída acumulándose intereses y cargos por mora. El lero de marzo de 2007, Eurobank presentó Demanda en Cobro de Dinero y Ejecución de Hipoteca contra la corporación, Cossío, su esposa y la Sociedad Legal de Gananciales por ambos compuesta.
En el mes de mayo de 2007, Eurobank presentó Demanda Enmendada, ya que el Sr. Baltazar Alberto Cossío Crespo había fallecido el 14 de enero de ese mismo año. La Demanda Enmendada acumuló como demandados a Cosscam Distributors, a la señora Luz Elena Camacho Negrón y a la sucesión del Sr. Cossío compuesta por Carmen Lydia Cossío Armaiz y Baltazar Alberto Cossío Armaiz, según surge de la Resolución de Declaratoria de Herederos de 27 de marzo de 2007. (Apéndice pág. 141). La codemandada Luz Elena Camacho Negrón contestó la demanda aceptando la existencia de las obligaciones contraídas con Eurobank, no cuestionando la validez de las mismas, y alegando que la deuda reclamada correspondía a la sucesión de Baltazar Cossío Crespo porque al divorciarse del Sr. Cossío y como parte de la liquidación *1233 ganancial, éste asumió dicha deuda. Así, la Sra. Camacho presentó Demanda de Coparte para que en la eventualidad de que recayere Sentencia contra ella, los herederos del Sr. Cossío le pagaran lo que ella viniera obligada a pagar a Eurobank. Los herederos del Sr. Cossío, aquí parte apelante y Cosscam Distributors Inc. presentaron contestación a la demanda indicando que habían aceptado la herencia a beneficio de inventarío. (Apéndice pág. 154V Dichos codemandados, alegaron en esencia, que las obligaciones contraídas por la corporación quedaron resueltas ante el incumplimiento de Eurobank, al “negarse a prestar cooperación y lealtad a la que quedó comprometido incumpliendo todas sus obligaciones de buena fe” y cuestionaron la validez de las garantías suscritas por el Sr. Cossío y la Sra. Camacho. (Contestación a la Demanda Apéndice págs. 154-1611.
Alegan los apelantes que tanto las obligaciones contraídas, como las garantías suscritas, son nulas porque Eurobank, a través de sus funcionarios y oficiales, indujo a los esposos Cossío Camacho y a la corporación, mediante promesas, representaciones y evaluaciones, a asumir las obligaciones para el beneficio de Cosscam Distributors. Alegan que Cosscam no se benefició, ya que Eurobank obstaculizó e impidió que la parte prestataria cumpliera con dichas obligaciones.
Mediante reconvención, los codemandados apelantes reformularon las defensas afirmativas anteriormente señaladas y solicitaron la imposición a Eurobank de daños por la suma de 13 millones de dólares por pérdidas económicas de la corporación y además solicitaron que el Tribunal, al desestimar la Demanda, decretara que las garantías y obligaciones prestatarias en que Eurobank basaba su reclamación eran nulas e inexistentes.
El 27 de noviembre de 2007, Eurobank presentó moción de sentencia sumaria por entender que no existía controversia sobre los hechos alegados en la Demanda. En esencia, Eurobank alegó, por un lado, que no estaba en controversia la existencia de las obligaciones contraídas por Cosscam Distributors Inc. y sus garantizadores Baltazar Alberto Cossío Crespo y Luz Elena Camacho Negrón, y por otro lado, alegó que no estaba en controversia que Eurobank desembolsó la suma de dinero prestada y que la parte prestataria incumplió con el pago de dichas obligaciones.
Alegó Eurobank, además, que tampoco estaba en controversia la existencia de la deuda que al 23 de enero de 2007, en cuanto al Préstamo Comercial, ascendía a $893,407.00 por concepto de principal, $53,840.18 por concepto de intereses, $5,673.65 por concepto de cargos por mora, $26,802.21 por concepto de penalidad por cancelación prematura más $134,011.05 por concepto de honorarios de abogado, para un total de $1, 113,734.09 más los intereses acumulados hasta el pago completo de la deuda. Eurobank alegó también que en cuanto a la línea de crédito, el balance pendiente al 23 de enero de 2007 era de $250,000.00 por concepto de principal, $15,294.09 por concepto de intereses, $752.34 por concepto de cargos por mora y $37,500.00 por concepto de honorarios de abogado, para un total de $303,546.43, más los intereses acumulados hasta el pago completo de la deuda. Eurobank anejó a la moción de sentencia sumaria los documentos correspondientes a la constitución de las obligaciones y los balances de los préstamos, incluyendo la aplicación de los pagos, debidamente certificados por el banco.
La parte codemandada Luz Elena Camacho Negrón, mediante moción presentada el 14 de marzo de 2008, se allanó a que el Tribunal de Primera Instancia dictara Sentencia Sumaria, expresando que luego de analizar los documentos incluidos en dicha moción, entendía que los mismos eran “correctos y fieles a la verdad”. (Apéndice pág. 151 La Sra. Camacho solicitó al foro primario que, no obstante haberse allanado a que se dictara sentencia sumaria, el pleito continuara en cuanto a la Demanda de Coparte solamente, ya que entendió que no existía impedimento alguno “para mantener litigando a la parte demandante en este caso”. (Apéndice, pág. 15T A la fecha de la muerte del Sr. Baltazar Alberto Cossió Crespo, ya éste y la Sra. Camacho se habían divorciado, mediante sentencia de divorcio dictada el 20 de febrero de 2004 (Apéndice pág. 1351.
El 28 de mayo de 2008, Cosscam Distributors, Inc. y los señores Baltazar Alberto Cossío y Carmen Lydia *1234 Cossío Armaiz presentaron oposición a la moción de sentencia sumaria, alegando que “parte” de los hechos alegados en la moción de sentencia sumaria se encontraban en controversia por lo que no procedía resolver el caso por la vía sumaria.
Los codemandados sostenían en su Oposición que las deudas fueron contraídas por Cosscam Distributors, Inc. y esa corporación se acogió a la Ley Federal de Quiebras, por lo que el Tribunal debía desestimar la demanda en cuanto a esa parte. De igual manera, los codemandados miembros de la sucesión solicitaron la desestimación de la demanda en cuanto a ellos “por ser nulas las garantías dadas por dicho finado causante y su ex-esposa Luz Elena Camacho Negrón por ser contrarias al orden público, al haber quedado obligada esta parte a renunciar a todas las causas de acción y defensas futuras”. (Apéndice, pág. 133). En particular alegaron los codemandados, al igual que alegan en el recurso apelativo, que debía desestimarse la demanda en cuanto a Luz Elena Camacho Negrón, porque las garantías por ella suscritas eran nulas por estar en violación del “Equal Credit Opportunity Act” y los correspondientes reglamentos federales. Cabe destacar que la Sra. Camacho no levantó esa defensa, sino, por el contrario, aceptó la validez de las obligaciones contraídas y de los documentos y garantías suscritos.
El 15 de julio de 2008, el Tribunal de Primera Instancia dictó la Sentencia Parcial apelada y en esa misma fecha además dictó Sentencia ordenando el archivo administrativo del caso en cuanto a la corporación Cosscam Distributors, Inc., por ésta haberse acogido a la protección de la Ley Federal de Quiebras. Ambas sentencias fueron notificadas el 22 de agosto de 2009.
Los codemandados-apelantes presentaron moción de reconsideración que fue declarada NO HA LUGAR. De la moción de reconsideración surgen unas alegaciones no incluidas expresamente por los codemandados-apelantes en su Contestación a la Demanda y Reconvención, que resultan sumamente pertinentes.
Surge de dicha moción que el 21 de junio de 2007, es decir, al mes de que Eurobank presentara la Demanda Enmendada en Cobro de Dinero y Ejecución de Hipoteca, los miembros de la Sucesión Cossío - Crespo, así como Cosscam Distributors Inc., propusieron a Eurobank, pagarle $14,000.00 mensuales “para ser aplicados a los préstamos hipotecarios y la línea de crédito” y pagar un alegado balance de $127,000.00 en un año o antes, ya que necesitaban, “obtener la titularidad de las propiedades inmuebles adjudicadas al causante”. (Apéndice pág. 25).
La moción de reconsideración acompañó como anejo una carta cursada por la abogada de los codemandados. Procedemos a citar el contenido de la carta:
“10 de agosto de 2007
Sr. Félix Morales, Jr.
Asistente de Prestamos
Especiales y/o Comerciales
Eurobank
PO BOX 19019
San Juan, P.R. 00919-1009
Ledo. Jenaro A. Medina Rosario
PO BOX 191682
San Juan, Puerto Rico 00919-1682
RE: COSSCAM DISTRIBUTORS, INC.
MAPOS DEL TOA, INC.
*1235 sue. BALTAZAR ALBERTO COSSIO CRESPO
Estimados Sr. Morales y Ledo. Medina:
El día 21 de junio de 2007, la representación legal de Eurobank, Ledo. Jenaro A. Medina, en presencia de la Sra. Carmen Armaiz Manzano, de la Sra. Carmen Lydia Cossío Armaiz y de la abogada suscribiente, nos leyó una carta enviada por el Sr. Félix Morales, Jr. donde nos reclamaba la suma de $88,000.00 por los atrasos de la deuda hipotecaria y la suma de $26,000.00 para poner al día los atrasos de la línea de crédito. De manera, re-instalar los préstamos mediante Estipulación ante el Tribunal.
En dicha reunión le propusimos a los representantes legales de Eurobank pagarles la suma de $14,000.00 mensuales comenzando el día 21 de junio de 2007 para ser aplicados a los préstamos hipotecarios y la línea de crédito y el balance de la suma de $127,000.00 pagarlos dentro del término de un (1) año y/o antes, pues necesitamos obtener la titularidad de las propiedades inmuebles adjudicadas al causante. Hasta el momento, aún no hemos obtenido la correspondiente Resolución del Tribunal de Familia (ANEJO 1), para poder resolver.
Para nuestra sorpresa, la respuesta de los representantes legales de Eurobank fue que teníamos que pagar la suma de $142, 000.00 por los atrasos del préstamo hipotecario y declararon vencida en su totalidad la línea de crédito. Y no empece a ello, también se han opuesto a las solicitudes de prórroga para contestar las demandas radicadas en nuestra contra. A pesar de Eurobank no haber emplazado a la otra parte. También nos exigieron una serie de documentos, y uno de ellos, es precisamente, la titularidad de los herederos sobre las propiedades inmuebles que garantizan los préstamos hipotecarios de Eurobank y razón de dichos herederos de solicitar un plazo de un año para pagar los atrasos y continuar pagando la suma de $14,000.00 mensuales hasta que se pague la totalidad de los atrasos. Nuestra intención siempre ha sido pagar y nuestros representados se sometieron voluntariamente a la jurisdicción del Tribunal por la economía procesal.
Estamos en proceso de vender una propiedad valorizada en al suma de $101,000.00, que en nada tiene que ver con las propiedades inmuebles que garantizan los préstamos de Eurobank y hasta que el Proceso de familia culmine no podemos hacer nada, por no tener la Sucesión en un 100% la titularidad de los bienes inmuebles adjudicados al causante.
Es por ello, que nuevamente Ies solicitamos que nos permitan pagar la suma de $14,000.00 mensuales hasta que logremos salvar todos estos obstáculos y esperamos que dentro del término de un año o antes liquidar dichos atrasos, ya sea saldando o refinanciando los préstamos.
Con gracias anticipadas por la atención y cooperación que puedan prestarles a la misma, se suscribe.
Cordialmente,
(Firmada)
GRIS EL YOLANDA MONTALVO”
[Abogada de los codemandados]
(Enfasis nuestro)
De manera que, aun cuando cuestionaban la validez de las transacciones efectuadas por su causante, los herederos apelantes negociaron extraj udicialmente con Eurobank para el pago de la deuda, objeto de la controversia ante el Tribunal de Primera Instancia, y por nó haber resultado dicha negociación exitosa para *1236 ellos, reclaman que Eurobank dolosamente impidió el cumplimiento del pago de la obligación adeudada.
II
El Art. 599 del Código Civil de Puerto Rico dispone que la “sucesión” es la transmisión de los derechos y obligaciones del difunto a sus herederos. El concepto “sucesión” se refiere “a la persona o personas llamadas por ley o por la voluntad del causante a recibir en todo o en parte la herencia de una persona fallecida” E. González Tejera, Derecho Sucesorio Puertorriqueño, Vol. I, pág. 9 (1993). La “herencia” es el patrimonio de la persona fallecida y se compone del “conjunto de bienes, derechos y obligaciones de que el causante era titular y que no se extinguieron por razón de su deceso”. Id. pág. 10. Art. 608 Código Civil de Puerto Rico.
Los codemandados apelantes presentaron Contestación a la Demanda, alegando que habían aceptado la herencia a beneficio de inventario. Lo anterior no es objeto del recurso apelativo presentado por lo que no pasamos juicio sobre el efecto, si alguno, en la sentencia apelada o la ejecución de la misma conforme lo establecido en los artículos 964 al 988 del Código Civil de Puerto Rico.
Por otro lado y en materia de obligaciones y contratos, es conocido que nuestro derecho contractual está cimentado en el principio de la autonomía de la voluntad y la libertad de contratación. Arthur Young & Co. v. Vega II, 136 D.P.R. 157, 169-170 (1994); Guadalupe Solis v. González Durieux, res. el 10 de diciembre de 2007, 2008 JTS 7. Dicho principio provee, según dispuesto por nuestro Código Civil, para que las partes contratantes establezcan los pactos, cláusulas y condiciones que tengan por convenientes, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Art. 1207 Código Civil de Puerto Rico.
Es norma firmemente establecida en nuestra jurisdicción que los contratos tienen fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento, cada contratante se obliga, “no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley”. íd. Art. 1210. Lo anterior se conoce como la doctrina de “pacta sunt servanda” que implica la obligatoriedad de los contratos según los términos y las consecuencias necesarias derivadas de la buena fe. Banco Popular de P.R. v. Sucesión Talavera, res. el 31 de julio de 2008, 2008 JTS 152; Corporación del Fondo del Seguro del Estado v. Unión de Médicos de la C.F.S.E., 170 D.P.R. 443 (2007).
Un contrato existe a partir de la concurrencia de los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato, y (c) causa de la obligación que se establezca. Arts. 1230 y 1213 Código Civil de Puerto Rico; Díaz Ayala et. al. v. E.L.A., 153 D.P.R. 675, 690-691 (2001). Así, son obligatorios los contratos, “cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez”. Art. 1230, Código Civil de Puerto Rico.
Nuesto Código Civil regula, entre distintos tipos de contratos, el contrato de garantía o fianza.
El Art. 1721 dispone que “[p]or la fianza [o garantía] se obliga uno a pagar o cumplir por un tercero, en el caso de no hacerlo éste”. Dispone además dicho artículo que si el fiador se obliga solidariamente con el deudor principal, dicha relación solidaria se regirá por lo dispuesto en los artículos 1090 al 1101 del Código Civil de Puerto Rico.
El contrato de garantía (o fianza) representa una obligación accesoria al contrato principal en el que se es la deuda. Al igual que la fianza, el contrato de garantía personal es generalmente “una obligación accesoria que, en garantía de deuda ajena, asume el fiador y que debe cumplir subsidiariamente en defecto del cumplimiento de la obligación fiada”. San José Realty S.E. v. El Fénix de P.R., 157 D.P.R. 427, 496 (2002).
Esa es la regla general y por eso es que el contrato de garantía personal, al igual que el contrato de fianza, se *1237 considera uno accesorio, porque el fiador se obliga a cumplir la obligación en el caso de no hacerlo el deudor principal.” íd. No obstante, se reconoce en nuestra jurisdicción la figura del fiador o garantizador solidario. El Tribunal Supremo de Puerto Rico en San José Realty S.E., supra, a las págs. 496-497, de manera expresa, explicó el alcance de dicha figura jurídica:
“La fianza puede constituirse en Puerto Rico para que los obligados respondan de manera solidaria. Dicha clase de fianza se pacta, en la mayoría de los casos, ‘para vincular con mayor intensidad al fiador proporcionándole al acreedor la más expedita satisfacción de su crédito’. La fianza solidaria abre patrimonios distintos al acreedor para garantizar su crédito o interés. El acreedor puede exigir la totalidad de la deuda a cualquiera de los fiadores o a ambos. De esta manera se distingue de la fianza simple en que los dos codeudores lo son de manera principal, sin subordinación de la deuda. No obstante, la solidaridad pactada en la fianza no hace que ésta pierda su naturaleza propia. Si el fiador se obligase solidariamente con el deudor principal, no debe entenderse en el sentido de que dejen de tener aplicación las reglas relativas a la fianza. Por ejemplo, la accesoriedad existe, incluso, cuando el fiador se ha obligado solidariamente con el deudor principal. Igualmente, el fiador solidario que paga parte de la totalidad de la deuda tiene derecho de reembolso y subrogación contra el deudor principal en los términos ordinarios. El acreedor no puede desconocer que el fiador solidario no es sino un garante, por lo que goza de los derechos de reembolso y subrogación que aquél debe respetar.” (Citas omitidas).
Dispone el Artículo 1097 del Código Civil que en el cobro de la deuda, el acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra todos ellos simultáneamente. Por otro lado, el hecho de que el deudor principal se acoja a la protección de la “Ley Federal de Quiebras” no elimina la obligación del garantizador solidario. En Cámara Insular Etc. v. Anadón, 83 D.P.R. 374, 380 (1961), el Tribunal Supremo de Puerto Rico resolvió que “la responsabilidad de una persona que es codeudor, fiador, o en alguna forma garantizador de un quebrado, no se altera por la adjudicación de quiebra de éste”, porque la iniciación del procedimiento de quiebra y la paralización automática de los procedimientos judiciales que afecten el caudal en quiebra, es una defensa personal que puede levantarse por el deudor peticionario únicamente y ésta no beneficia a los codeudores. Id. Véase además San José Realty, S.E., supra, págs. 505-506.
m
La Regla 36 de las de Procedimiento Civil de Puerto Rico dispone en lo pertinente que una parte que trate de obtener un remedio mediante demanda podrá en cualquier momento, luego de que hayan transcurrido 20 días a partir del emplazamiento a la parte demandada, presentar una moción basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre toda o parte de su reclamación. Procederá dictar sentencia sumaria cuando de los documentos que acompañan la solicitud surja que no existe disputa o controversia sobre algún hecho esencial, sino que tan sólo resta aplicar el Derecho. Véase Audiovisual Language v. Sistema de Estacionamiento Natal, 144 D.P.R. 563 (1997). Siendo éstas las circunstancias del caso ante un tribunal, podrá entonces disponerse del asunto por la vía sumaria sin tener que entrar en un juicio y someter a las partes a los rigores que ello acarrea. Véase Rosario Ortiz v. Nationwide Insur. Co., 158 D.P.R. 775 (2003).
La sentencia sumaria es un mecanismo procesal de carácter discrecional que únicamente se concederá en aquellos casos en que la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. Únicamente debe ser dictada una sentencia sumaria en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos materiales y pertinentes. Véase PFZ Properties v. General Accident, 136 D.P.R. 881 (1994); Corp. Presiding Bishop v. Purcell, 117 D.P.R. 714 (1986). La sentencia sumaria sirve el propósito de facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales y que, por tanto, no ameriten la celebración de un juicio en su fondo. Véase Vera Morales v. Bravo Colón, 161 D.P.R. 308 (2004); PFZ Properties v. General Accident, supra; Hernández v. Hernández, 150 D.P.R. 171 (2000).
*1238 Es por lo anterior que, como foro apelativo, debemos cerciorarnos de que al dictar sentencia sumaria, el tribunal sentenciador hizo lo siguiente: (1) analizar los documentos que acompañan la moción solicitando sentencia sumaria, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; y (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Vera Morales v. Bravo Colón, supra; PFZ Properties v. General Accident, supra.
Para derrotar una solicitud para que se dicte sentencia sumariamente, la parte opositora deberá presentar declaraciones juradas, y cualquier documento que ponga en controversia los hechos materiales presentados por el promovente de la solicitud. Véase Vera Morales, supra. Si se cruza de brazos, correrá el riesgo de que le dicten sentencia en su contra sin que se celebre un juicio plenario. Sin embargo, el simple hecho de no oponerse con evidencia que controvierta la presentada por el promovente no implica que necesariamente proceda la sentencia sumaria o que el promovente tenga derecho a que se dicte a su favor. Corp. Presiding Bishop v. Purcell, supra.
En Vera, supra, pág. 333, el Tribunal reafirmó que al atender una moción de sentencia sumaria, “los jueces no están constreñidos por los hechos o documentos evidenciarlos que se aduzcan en la solicitud de sentencia sumaria”, sino que además deberán considerar “todos los documentos en autos, sean o no parte de la solicitud, de los cuales surjan admisiones que hagan las partes”. De manera que si luego de un ponderado examen del expediente judicial el tribunal entiende que existe controversia sobre los hechos medulares del caso no debe dictar sentencia sumariamente, sino adjudicar las controversias una vez celebrado el Juicio.
En lo que respecta al Derecho Apelativo, a pesar de que, como norma general, hemos sido consistentes en que le brindaremos deferencia al Tribunal de Primera Instancia en la apreciación de la prueba, debemos tener presente que estamos en igual posición que el foro primario para evaluar prueba documental. Rivera Torres v. Pan Pepin, Inc., 161 D.P.R. 681 (2004); Trinidad García v. Chade, 153 D.P.R. 280 (2001); Moreda Toledo v. Rosselli, 150 D.P.R. 473 (2000).
IV
En el presente caso, de conformidad con lo dispuesto por nuestro ordenamiento civil y jurisprudencia aplicable, entendemos que el Tribunal de Primera Instancia procedió correctamente al disponer del caso por la vía sumaria. Como bien señaló el foro primario en su Sentencia Parcial final, la parte codemandada-apelante no controvirtió la existencia y validez de las obligaciones contraídas por su causante. La existencia de las garantías solidarias, personales y continuas suscritas por los señores Baltazar Alberto Cossío Crespo y Luz Elena Camacho Negrón, así como la existencia de los contratos de préstamo comercial y línea de crédito, las firmas en los mismos, además de los términos y condiciones pactados no ha sido controvertido. Tampoco se cuestionó que los fondos producto de los préstamos fueran desembolsados por Eurobank a favor de la parte prestataria, ni se negó ni fue controvertida la existencia de la deuda, ya que los propios codemandados apelantes llevaron a cabo negociaciones extrajudiciales con Eurobank para el pago de dicha deuda. El hecho de que Eurobank no haya accedido a la forma de pago requerida por los recurrentes no es motivo, bajo cualquier interpretación de nuestro derecho de obligaciones y contratos, para dejar sin efecto las obligaciones contraídas por los garantizadores solidarios y mucho menos para establecer la existencia de una causa de acción en daños y perjuicios. Tampoco el hecho de que la corporación Cosscam Inc. se haya acogido a la protección de la Ley de Quiebras Federal es motivo para que la demanda fuera desestimada en cuanto a los codemandados apelantes y la Sra. Camacho. Los garantizadores solidarios, en este caso, los miembros de la sucesión de Baltazar Cossío Crespo y la señora Luz Elena Camacho, son responsables ante el acreedor. Por último, alegan los apelantes que las garantías son nulas por violar el “Equal Credit and Opportunity Act”, 15 USC 1691 y la reglamentación federal aplicable. No le asiste la razón a los apelantes, porque dicha legislación federal es aplicable a préstamos de consumo tomados por personas naturales y en este caso los tomó la corporación para su operación comercial. En cuanto a la alegación de que Eurobank incurrió en una práctica ilegal, bajo ECOA, consistente en discrimen *1239 por status matrimonial al exigirle a la Sra. Luz Elena Camacho que suscribiera una garantía personal continua, tampoco le asiste la razón a los apelantes, primero porque es a la Sra. Camacho a la que le hubiera correspondido presentarla y no lo hizo, y segundo porque como ya expresamos, dicha legislación federal no es aplicable a los préstamos y garantías objeto de este caso.
A tales efectos, determinamos que no erró el Tribunal de Primera Instancia al dictar la Sentencia Parcial final de 15 de julio de 2008 y por ello la confirmamos.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIO 2010 DTA 68